[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 16, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11345
Non-Argument Calendar

_____

D. C. Docket No. 05-02239-CV-T-24-TBM

DEBRA A. SATCHEL,

Plaintiff-Appellant,

versus

SCHOOL BOARD OF HILLSBOROUGH COUNTY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 16, 2007)**

Before TJOFLAT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Debra A. Satchel is an African-American woman who was employed by the

Hillsborough County School Board from November 7, 1983 to October 13, 2004. During that time, she worked as a teacher at several high schools, as a personnel specialist for the school district's Human Resources Department, and as an employee at the Office of Professional Standards. On June 22, 2004, the Superintendent of Schools informed Satchel that he was recommending to the School Board that she be dismissed for, among other things, insubordination, violation of or willful refusal to obey laws or policies relating to public schools, and failure to demonstrate competency to perform her duties. Following an administrative hearing to consider the Superintendent's recommendation – at which Satchel, represented by counsel, and twelve witnesses testified, the School Board voted unanimously to terminate Satchel's employment.

Satchel, proceeding pro se, thereafter brought this lawsuit. In a third amended complaint ("complaint"), she asserted claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), alleging that the School Board discharged her (1) as a retaliatory measure because she engaged in activity protected by Title VII; (2) because she had requested that the School Board make accommodations under the Americans with Disabilities Act ("ADA") for her disabilities, to-wit: Post-Traumatic Stress Disorder ("PTSD") and depression; and (3) that she had suffered

a hostile work environment on account of her race.[1]

The district court, in an order entered on August 25, 2006, dismissed Satchel's claim of retaliation based on race for failure to state a cause of action. In an order entered on February 20, 2007, the court granted the School Board summary judgment on her retaliation claim based on her request for accommodations and her claim of hostile work environment based on race. She now appeals. We affirm.

## I. Dismissal of Title VII Retaliation Claim

"We review <u>de novo</u> the district court's grant of a motion to dismiss for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the nonmoving party." <u>Kizzire v. Baptist Health System, Inc.</u>, 441 F.3d 1306, 1308 (11th Cir. 2006). To establish a <u>prima facie</u> case of retaliation forbidden by Title VII, the plaintiff must show that: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571, 587 (11th Cir. 2000). The activities cited in Satchel's complaint, including filing a union grievance, filing an informal

---

[1] The complaint also asserted a claim for breach of contract, which the court dismissed under Fed. R. Civ. P. 12(b)(6). That claim is not before us in this appeal.

complaint of harassment by a co-worker, and writing letters to the editor of local newspapers, do not constitute the type of protected activity contemplated by Title VII because Satchel failed to allege that the complaints included in these documents had any relationship to race or otherwise indicate that the School Board was engaged in unlawful employment practices. Although she eventually filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging race, age, and disability discrimination, she filed that complaint in March 2005, months after she was terminated from employment. While an EEOC complaint constitutes protected activity under Title VII, Satchel did not engage in this activity while she was still employed by the School Board and, thus, has failed to establish a causal connection between the protected activity and her termination from employment, which is necessary to sustain a claim of retaliation.

## II. Summary Judgment as to ADA Retaliation Claim

We review the grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. Johnson v. Governor of Fla., 405 F.3d 1214, 1217 (11th Cir. 2005) (en banc). Summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

4

judgment as a matter of law." Fed.R.Civ.P. 56(c).

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a). "This provision creates a prohibition on retaliation under the ADA that is similar to Title VII's prohibition on retaliation." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997). Accordingly, we assess ADA retaliation claims under the same framework employed for retaliation claims arising under Title VII. Standard v. A.B.E.L. Services, Inc, 161 F.3d 1318, 1328 (11th Cir. 1998). To establish a prima facie case of ADA retaliation, a plaintiff must show: "(1) that [s]he engaged in statutorily protected activity; (2) that [s]he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action." Id. "Once a plaintiff has established a prima facie case [of retaliation], the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). If accomplished, the plaintiff then bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct. Id.

5

"[T]he mere existence of a [mental] impairment does not constitute a disability under the ADA; the impairment must substantially limit a major life activity." Standard, 161 F.3d at 1328. In determining whether an impairment substantially limits a major life activity, we consider "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Id. (quotation omitted).

The record indicates that Satchel submitted a request for accommodations based on her psychiatrist's diagnosis of PTSD and depression. Although the letter indicates that Satchel's PTSD and depression are "chronic" conditions, there is no evidence in either the letter, or the remainder of the record, to indicate that Satchel's psychiatrist or others determined that those conditions would substantially limit Satchel's ability to work either long term or permanently. Accordingly, Satchel failed to establish that her subjective belief that she was entitled to accommodations because of her PTSD and depression was objectively reasonable.

Further, although Satchel was terminated from employment, constituting an adverse employment action, her termination occurred in October 2004, approximately two years after she submitted her request for accommodations in

6

July 2002. Thus, Satchel failed to demonstrate the existence of a causal connection between the two events. Accordingly, Satchel cannot establish either the first or the third element necessary to sustain a prima facie case of retaliation under the ADA. Moreover, aside from her own unsupported assertions, Satchel failed to present evidence to show that the School Board's non-retaliatory reasons for terminating her employment were a pretext for discrimination.

### III. Summary Judgment as to Title VII Hostile-Work-Environment Claim

"A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotation omitted). Title VII is not meant to serve as "a general civility code." See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). In order to establish a prima facie claim of a hostile work environment, a plaintiff must establish:

> (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment [was] based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for

7

such environment under either a theory of vicarious or of direct liability.

Miller, 277 F.3d at 1275.

The fourth element–that the harassment altered the terms and conditions of employment–contains both a subjective and an objective component. Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999). Thus, to satisfy this element, the employee must show that she subjectively perceived the harassment as severe and pervasive enough to change the terms or conditions of employment and present facts sufficient for the district court to find that this perception was objectively reasonable. Id. In making this objective determination, the following factors should be considered: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. The Supreme Court has noted that teasing, offhand comments and isolated incidents do not constitute discriminatory changes in the terms and conditions of employment. Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 2284, 141 L.Ed.2d 662 (1998).

Satchel appears to establish the first two elements of the prima facie case because she is a member of a protected group and she asserted that she experienced harassment from several co-workers. The only evidence in the record concerning

8

the third element of the prima facie case, however, consists of Satchel's conclusory statements and beliefs that one of her co-workers was "a racist," and that the school district was affected by institutional racism.  Satchel admits, however, that she did not know what motivated the harassment from the remainder of her co-workers and that the behavior she observed and experienced did not consist of any racially derogatory statements or acts.

Further, Satchel cannot satisfy the fourth element of the prima facie case because she did not present evidence to show that the harassment she experienced was severe and pervasive.  The harassment Satchel complained of consisted of specific, isolated incidents which occurred over a period of years at different schools.  In addition, none of the incidents complained of were physically threatening or severe.  To the contrary, the evidence in the record shows that many of the incidents cited in Satchel's complaint, motion, and brief on appeal consist of workplace disputes concerning attendance procedures, classroom management, and compliance with policies such as not leaving students unattended in the classroom. Although these disputes and confrontations were subjectively perceived by Satchel to constitute a hostile work environment, such a perception was not objectively reasonable.  Accordingly, Satchel failed to establish a prima facie case of hostile work environment based on race.

9

**AFFIRMED.**